# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0991-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

Z.B.,

     Defendant-Appellant,

and

N.J.P., JR.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
M.S.B. and N.A.B., minors.

_____

     Submitted September 23, 2025 – Decided October 14, 2025

     Before Judges Sumners and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FG-15-0012-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Catherine W. Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Michelle J. McBrian, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant Z.B. (Zindy)[1] appeals from the trial court's November 14, 2024 order terminating her parental rights to her daughters, M.S.B. and N.A.B. (Nellie), who were nearly four and three years old, respectively.[2] We affirm.

The parties presented their cases over four non-consecutive trial days before the Family Part judge. The Division of Child Protection and Permanency (DCPP) presented testimony from Alan J. Lee, Psy.D., a psychological expert;

---

[1] We use initials and pseudonyms to preserve the parties' confidentiality. See R. 1:38-3(d)(12).

[2] The girls' father N.J.P., Jr. (Neal) surrendered his parental rights at the beginning of trial.

A-0991-24

two DCPP employees, Takesha Yankannah, a permanency worker, and Melissa Gambardella, an adoption worker, and M.J. (Melissa), paternal relative resource parent. Defendant did not testify but presented testimony by Andrew Brown, III, Ph.D., a psychological and neuropsychological expert. The Law Guardian supported DCPP's termination of parental rights plan followed by Melissa's adoption and has continued to do so on appeal.

Our review of a trial judge's termination of parental rights is limited. N.J. Div. of Child Prot. & Permanency v. C.J.R., 452 N.J. Super. 454, 468 (App. Div. 2017). We do not reverse the "[judge's] termination decision 'when there is substantial credible evidence in the record to support the court's findings.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We defer to the judge's fact-findings and credibility determinations. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552-53 (2014). Deference is accorded to the judge's findings of fact due to "'the Family Part['s] . . . special expertise . . . in domestic relations.'" Id. at 553 (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). The judge has "the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [the judge] has a 'feel of the case' that can never be realized by a review

A-0991-24

of the cold record." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

"Only when the trial [judge's] conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure . . . there is not a denial of justice." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). No deference is given to the judge's interpretation of the law, which is reviewed de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

To decide whether to terminate parental rights, a trial judge considers the four-prong best interests test:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The [DCPP] has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

A-0991-24

[N.J.S.A. 30:4C-15.1(a).]

DCPP must prove the four prongs by "clear and convincing" evidence. N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 611-12 (1986). The prongs "are not discrete and separate; they . . . overlap . . . to . . . comprehensive[ly] . . . identif[y] a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). These considerations are fact-sensitive and require particularized evidence addressing the specific circumstances. Ibid.

Zindy argues on appeal that DCPP failed to satisfy the four prongs of the best interest test. We do not detail DCPP's involvement with Zindy and her family set forth in the judge's order. We incorporate by reference the factual findings in the judge's written decision because they are supported by clear and convincing evidence in the record and carefully track the statutory requirements of the best interest test. We address each prong of the test as follows.

First Prong

Zindy contends DCPP failed to prove that she endangered her children's health, safety, and development and declined to meaningfully engage with the services offered by DCPP to warrant reunification with her daughters. We are unpersuaded.

5

The record supports the judge's finding by clear and convincing evidence that Zindy subjected her daughters to harm by exposing them to domestic violence, substance abuse, and her mental health issues. DCPP received at least five referrals between 2020 and 2022 regarding Zindy's struggles with mental health issues, substance abuse, and domestic violence incidents—all of which exposed her children to the risk of harm under prong one. During this period, Zindy moved her children from her mother's home, where she alleged she was verbally and physically assaulted, to various domestic shelters while maintaining contact with Neal, with whom she initiated and faced domestic violence from. Zindy received treatment in a psychiatric hospital, expressed suicidal ideation, and was briefly incarcerated. On one occasion, Zindy was arrested after engaging in a "rolling domestic [dispute]" while heavily intoxicated, physically assaulting Neal while driving, and subjecting infant Nellie to injury by pouring a "[five]-gallon bottle of motor oil" in the back of the car where Nellie was seated.

Zindy correctly notes that she improved her situation by securing permanent housing (for five months at trial), becoming sober, and beginning certain programming. However, the judge relied upon Dr. Lee's testimony that her mere engagement with services is not sufficient to address her "chronic

6

entrenched issues[,]" because it takes significant time to improve one's behavior. The doctor further noted Zindy's continued problematic behavior and risks that could adversely affect her parenting.

In sum, the evidence showed that Zindy harmed her daughters because she was unable to properly parent them due to domestic violence, substance abuse, and mental health issues. See N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 436 (App. Div. 2001) (finding that the first prong was satisfied where a mother was incapable of parenting and managing stress due to her significant mental health diagnoses); N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 449 (2012) (noting that "a mother's relationship with her child's potentially dangerous father" is relevant when assessing the threat of harm under prong one).

Second Prong

Zindy asserts the judge erred in finding that she was unwilling or unable to eliminate the harm posed to her children and improperly relied upon her daughters' placement with Melissa as a basis to terminate her parental rights. We find no error.

Initially, we note the first and second prongs "are related to one another, and evidence that supports one informs and may support the other" under the

7

A-0991-24

best interests of the child test.  In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999).  The record supports the judge's finding by clear and convincing evidence that Zindy was unwilling or unable to eliminate the harm posed to her children.  She initially did not visit her children because of her failure to resolve an outstanding warrant.  She failed to timely complete DCPP's recommended evaluations and services.  Additionally, although Zindy was sober and compliant with substance abuse treatment at the time of trial, the judge found credible Dr. Lee's testimony that she was unlikely to become an effective parent in the foreseeable future due to other risk factors.

Third Prong

Zindy asserts the judge erred in finding that she did not successfully complete any services before the trial.  We find no error.

The record supports the judge's finding by clear and convincing evidence that DCPP made reasonable efforts to connect Zindy with counseling, substance abuse treatment, and housing assistance.  The agency scheduled her for three psychological evaluations, which she failed to attend, as well as anger management classes.  DCPP referred her to substance abuse treatment programs, but she was discharged from the programs due to noncompliance.  The judge stressed that Zindy failed to complete any services by the commencement of

8

trial; not that she failed to make any progress in terms of sobriety or housing. Zindy's "limited progress," however, according to the judge, was insufficient to correct the harm caused by her prior prevalent behavior. Furthermore, even recognizing some merit to Zindy's argument does not invalidate the judge's finding that DCPP provided proper services which she mostly failed to complete.

Additionally, the judge correctly found that DCPP explored alternative placements before seeking parental termination. He pointed to DCPP's two implemented safety protection plans to address domestic violence between Zindy and Neal. DCPP explored Kinship Legal Guardianship (KLG) with Melissa on several occasions, explaining the differences between KLG and adoption. However, Melissa was only committed to adoption because of Zindy's history of "inappropriate and threatening behavior towards her."

Fourth Prong

Zindy argues the judge erroneously found that termination of her parental rights would not cause more harm than good because the judge did not consider her strong emotional bond with her children, and how parental termination would adversely affect them. She stresses the judge should have given greater weight to Dr. Brown's testimony because he conducted bonding evaluations of

9

her daughters, in contrast with Dr. Lee who did not conduct bonding evaluations or consider DCPP records (visitation sheets) documenting her strong bond with her daughters. We find no error.

The record supports the judge's finding by clear and convincing evidence that terminating Zindy's parental rights would not do more harm than good. For support, the judge cited Melissa's "loving, stable and reliable caretak[ing]" of the children for the past two years; Zindy's minimal progress in successfully completing services to allow for reunification; and that Dr. Brown recommended that Zindy continue supervised visitation. Although Dr. Lee's assessment was based solely on his interview with Zindy and review of her records and he did not conduct a bonding evaluation of Zindy or Melissa, this was not fatal to the judge's fourth prong finding.

In this matter, a bonding evaluation was not required. A bonding evaluation is only necessary to assess prong four. N.J. Div. of Youth & Fam. Servs. v. A.R., 405 N.J. Super. 418, 436-37 (App. Div. 2009). However, one is not required where termination "[is] not predicated upon bonding, but rather reflect[s] [the child's] need for permanency and [the parent's] inability to care for [the child] in the foreseeable future." N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582, 593 (App. Div. 1996). The judge appropriately

10

recognized Zindy's reunification prospects are dire due to her history of substance abuse, poor mental health, and insufficient engagement in services. The children are in a stable, thriving, and loving placement with Melissa, who seeks to adopt them. Based on these circumstances, the trial judge correctly determined that termination of parental rights will not do more harm than good. A bonding evaluation would not have disproved this fact.

For these reasons, there is no basis to second-guess the Family judge's findings that termination of parental rights was in the children's best interests. Any arguments raised by Zindy not addressed is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

11